**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| RONETTA SMITH, in her personal capacity and as *guardian ad litem* to MILDRED SMITH and DORIS SMITH | ) ) ) ) | |
| | ) | No. 24 C 11732 |
| *Plaintiff,* | ) | |
| v. | ) | Chief Judge Virginia M. Kendall |
| | ) | |
| RESPIRO, LLC and RESICAP, LP, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ronetta Smith brought this action against Defendants ResiPro, LLC and ResiCap, LP in her individual capacity and on behalf of two disabled adults under her guardianship—Mildred and Doris Smith.[1] Smith alleges ten causes of action under state and federal law stemming from construction work the Defendants performed on Plaintiff's residence. (*See* Dkt. 9). Defendants now move to dismiss the entirety of Plaintiff's complaint under Rule 12(b)(6), alleging her claims are both time-barred and factually deficient. For the following reasons, Defendants' Motion to Dismiss [13] is granted in part.

## BACKGROUND

This lawsuit arises out of a *qui tam* action (the "Chicago Lawsuit") brought by Timothy Haggerty, in which the City of Chicago intervened pursuant to the City's False Claims and False Statements Ordinances, Mun. Code Chi. §§ 1-21-010(a), 1-22-020(a). (*See generally* Dkt. 1-4 at 13–67 (City of Chicago's Complaint in Intervention)); *City of Chicago ex rel. Timothy Haggerty*

---

[1] Although the parties refer to Ronetta, Mildred, and Doris Smith as "Plaintiffs" in their briefing, only Ronetta Smith is listed as a party on the docket, acting in her individual capacity and as a legal guardian. Accordingly, for the purposes of this Opinion and Order, the Court will use the singular terms "Plaintiff" and "Smith."

*v. ResiCap, LP & ResiPro, LLC*, No. 2020 L 007974 (Ill. Cir. Ct. 2020). That case alleged that ResiCap and ResiPro violated various municipal ordinances by conducting home rehabilitation work in the City of Chiago without proper permits, in violation of stop work orders, and with the use of unlicensed subcontractors. (Dkt. 1-4 at 23–52). The Chicago Lawsuit involved 120 homes spread across the city, but it was alleged that ResiCap and ResiPro focused their renovation efforts on underserved communities on the south and west sides. (Dkt. 1-4 at 19). In February 2024, ResiCap and ResiPro settled the Chicago Lawsuit for $2.2 million. (Dkt. 9 ¶ 20).

Smith owns one of the 120 homes involved in the Chicago Lawsuit. In May 2017, she began the process of acquiring a home on the south side of Chicago (hereinafter, "the Property") through the Chicago Housing Authority's ("CHA") Choose to Own Homeownership Program. (Dkt. 9 ¶ 14). That program permits Section 8 Housing Choice Voucher participants, like Mildred Smith, to put their housing subsidy toward the purchase of a home instead of rent. (*Id.*) The Smiths closed on the Property on June 22, 2017, and funded the purchase with a Federal Housing Administration loan. (*Id.* ¶ 16). They purchased the Property in "as-is condition" from Kondaur Capital Corporation ("Kondaur").

Smith alleges that, shortly after the sale, she began to experience "severe construction issues" she attributes to ResiPro's work. (*Id.* ¶ 17). She does not, however, allege that she was the one to hire ResiPro. And her Complaint confirms that it was the previous owner, Kondaur, that hired ResiPro for some amount of rehabilitation work on the property prior to the sale. (*See id.* ¶¶ 14–17). Indeed, Defendants repeatedly and forcefully point out in their Motion to Dismiss that they never entered a contract with the Smiths. (*See, e.g.*, Dkt. 14 at 25). Smith concedes this point in response but suggests that, although Kondaur was the contracting party, ResiPro completed that construction work "in order to secure the real estate transaction." (Dkt. 20 at 5). As far as the Court

can tell, the Plaintiff's theory is that ResiPro was somehow incentivized to complete quick and shoddy work to receive some of the Plaintiff's HUD-backed mortgage funding upon sale of the Property. (*See* Dkt. 9 ¶ 15). There is no specific allegation in the Complaint, though, connecting Defendants' prospect of payment to the Plaintiff and the underlying real estate transaction between Smith and Kondaur. Again, the Defendants maintain they were "run-of-the-mill general contractors hired and paid by . . . Kondaur," a private property owner. (Dkt. 14 ¶ 24).

Smith alleges that, on May 2, 2017, shortly after she began the process of buying the Property, there was an "inspection report." (Dkt. 9 ¶ 15). While it is not clear to the Court from Smith's Amended Complaint what kind of inspection report occurred, who completed it, and whether the Defendants were involved, Smith contends that after this date—but presumably before the sale was finalized on June 22, 2017—Defendants made a series of misrepresentations and violated various state and federal laws. Specifically, she states:

> Defendants made false representations to city officials, failed to apply for appropriate city permits for their rehab work, failed to use licensed subcontractors as required by the City's Construction Codes, focused their work in historically underserved areas of the South and West sides of Chicago, and made false statements to all parties in the real estate transaction in order to induce a fast profit for the selling of the Property and receipt of HUD backed mortgage funding in the CHA collaboration with HUD government programs for first time homebuyers in majority minority neighborhoods.

(*Id.*) Some of these allegations appear to be specific to the Smith real estate transaction, but others complain of Defendants' practices more broadly, as detailed in the Chicago Lawsuit Complaint.

Upon moving into the Property and discovering various construction issues, Smith was forced to hire a separate contractor to do repair work. (*Id.* ¶ 17). She owes that contractor nearly $70,000 and is facing a possible contractor's lien on the Property. (*Id.* ¶¶ 18–20). In May 2024, a major systems construction inspection pursuant to the City of Chicago Lawsuit revealed "major plumbing and electrical" needs, a faulty furnace, and water damage and mold throughout the home

3

attributable to poorly constructed pipes. (*Id.* ¶ 20–21). As a result of the inspection, Smith was approved for the "maximum amount of $10,000 due to all listed Owners" of properties involved in the Chicago Lawsuit. (*Id.* ¶ 20). Smith alleges that the mold throughout the Property has caused respiratory issues for herself, Mildred, and Doris. (*Id.* ¶¶ 22–25). The three have left the Property and are temporarily living at a motel. (*Id.* ¶ 23).

Smith filed her complaint in state court on September 18, 2024, alleging six causes of action under Illinois law. (Dkt. 1-2). Defendants filed a notice of removal under 28 U.S.C. § 1441 based on diversity of citizenship. (Dkt. 1-1). On December 31, 2024, Smith filed a First Amended Complaint with the Court's leave. (Dkt. 8; Dkt. 9). The First Amended Complaint retained Smith's six state claims, added a state negligence claim, and added three federal causes of action under the False Claims Act, Fair Housing Act ("FHA"), Rehabilitation Act, and Americans with Disabilities Act ("ADA"). (*See* Dkt. 9). Defendants now move to dismiss under Fed. R. 12(b)(6) on timeliness and substantive grounds.

## <u>LEGAL STANDARD</u>

To survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must "state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts a complaint's factual allegations as true and draws all permissible inferences in the plaintiff's favor. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court considers the complaint itself along with "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *See Matthews v. Hughes*, 2015 WL 5876567, at *1 (N.D. Ill. Oct. 5, 2015) (citation modified) (citing *Philips v. Prudential Ins. Co. of*

*Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013)); *see also Lax v. Mayorkas*, 20 F.4th 1178, 1181 n.1 (7th Cir. 2021).

Statutes of limitations are affirmative defenses, not ordinarily considered at the motion to dismiss stage. A defendant is permitted to raise a statute of limitations defense at the motion to dismiss stage "if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.' " *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). If, however, there is "any set of facts that if proven would establish a defense to the statute of limitations," the motion to dismiss should be denied on those grounds. *Clark v. City of Braidwood*, 318 F.3d 764, 768 (7th Cir. 2003).

## DISCUSSION

The Defendants first ask the Court to dismiss all ten of Smith's claims as barred by various statutes of limitations. (Dkt. 14 at 6–17). In the event the Court disagrees with their timeliness arguments, they further seek dismissal based on factual insufficiency and vagueness, again as to all claims. (*Id.* at 17–34). As an initial matter, two of Smith's claims, under the False Claims Act, 31 U.S.C. § 3730(b)(1), and the Illinois Home Repair Fraud Act, 815 ILCS 515/3 call, for special consideration.

### I.    False Claims Act (Count I)

Plaintiff's state court complaint did not allege any federal causes action, including Count I of her First Amended Complaint for violations of the False Claims Act, 31 U.S.C. §§ 3729, 3730(b)(1). That claim, along with her other federal claims, were only added to Plaintiff's First Amended Complaint after Defendants removed to federal court. The False Claims Act "imposes civil liability on 'any person' who 'knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval' to the Government or to certain third parties acting on

the Government's behalf." *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S. 262, 265 (2019) (quoting 31 U.S.C. § 3729(a), (b)(1)). While the parties debate whether the False Claims Act's six-year (or perhaps three-year) clock has run on Plaintiff's claim, they do not address a more fundamental aspect of the claim, which is whether the Department of Justice has received notice of the conduct underlying Plaintiff's Complaint. *See* 31 U.S.C. 3731(b)(1)–(2).

Because False Claims Act cases are brought both for the individual plaintiff "and for the United States Government," they are subject to specific procedures. 31 U.S.C. § 3730(b)(1). Of relevance here, *qui tam* plaintiffs like Smith are required by statute to file their False Claims Act complaints under seal and serve the United States government with a "copy of the complaint and written disclosure of substantially all material evidence and information" relevant to their case. § 3730(b)(2); *State Farm Fire and Cas. Co. v. U.S. ex rel. Rigsby*, 580 U.S. 26, 33–34 (2016) (recognizing § 3730(b)(2) provides a "mandatory rule the relator must follow"). The sealing and disclosure provision in § 3730(b)(2) serves to "allay the Government's concern that a relator filing a civil complaint would alert defendants to a pending federal criminal investigation." *Rigsby*, 580 U.S. at 34.

Smith does not appear to have complied with either the disclosure or sealing requirement. Instead, she merely added her False Claims Act claim to her First Amended Complaint which was subsequently filed on the public docket. (*See* Dkt. 9 at 7). This failure is more troubling considering Plaintiff appears to have read and considered these requirements. (*See* Dkt. 9 ¶ 29 (referencing the False Claims Act's discussion of "service of notice on the Government pursuant to Federal Rules of Civil Procedure 4(d)(4)")). Plaintiff states in her response to the Motion to Dismiss that the Smiths "are notifying the federal government" and that the government may "seek to intervene and continue that claim on behalf of the HUD funds." (Dkt. 20 at 7). These statements do nothing

to assuage the Court's concerns that the sealing requirement was completely disregarded and that it remains uncertain what the Plaintiff means when she says she is "notifying the federal government." For if Smith had notified the Government as § 3730(b)(2) requires, the Department of Justice would have had to elect to intervene within 60 days of receiving notice, while the Complaint should have still been under seal. *See* 31 U.S.C. § 3730(b)(4).

Although failure to comply with the False Claims Act's sealing and disclosure requirement does not mandate dismissal, the Court is troubled with the prospect of permitting Plaintiff to proceed on this claim without ever having provided the Government with an opportunity to intervene and after such a wholesale violation of her mandatory obligations as a *qui tam* plaintiff. *Rigsby*, 580 U.S. at 34. Based on these concerns, and the parties' failure to address the issue in their briefing, the Court reserves judgment on Count I of the Complaint and requires additional briefing on the issue. Defendants are directed to file a brief of no more than five pages on the subject within fourteen days of the filing of this opinion, and Plaintiff must file a response of no more than five pages within seven days of the Defendant's filing. Thereafter, the Court will Rule on whether Plaintiff's False Claims Act claim can proceed.

## II.    Illinois Home Repair Fraud Act (Count VI)

In Count VI of her Complaint, Smith alleges that Defendants violated the Illinois Home Repair Fraud Act. 815 ILCS 515/3. As Defendants point out, the Home Repair Fraud Act is a criminal statute that does not include a private cause of action. (Dkt. 14 at 11). Accordingly, they ask the Court to dismiss this Count with prejudice. Smith acknowledges this reality, but urges the Court to imply a private cause of action, ostensibly because failure to do so would "prevent the statute[] from [its] purpose." (Dkt. 20 at 5). Smith inexplicably proceeds to cite federal conflict preemption law, which has no bearing on whether a private cause of action exists with respect to

7

this state criminal statute. (Dkt. 20 at 5–6 (quoting *Wigod v. Wells Fargo Bank, NA*, 673 F.3d 547, 578 (7th Cir. 2012)).

Illinois courts rarely imply a private right of action for a criminal statute. That is because doing so is "generally unnecessary . . . where the statute provides penalties that are likely to be sufficient incentives for compliance with the statute." *Bertha v. Willett*, 2022 WL 17456416, at *3 (Ill. App. Ct. Dec. 6, 2022) (citing *Moore v. Lumpkin*, 630 N.E.2d 982, 995–96 (Ill. App. Ct. 1994)). Nonetheless, it is possible for the Court to imply a private cause of action when none exists if "(1) the plaintiff is a member of the class for whose benefit the statute was enacted, (2) a private right of action is consistent with the underlying purpose of the statute, (3) the plaintiff's injury is one the statute was designed to prevent, and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute." *O'Malley v. Adams*, 227 N.E.3d 800, 811 (Ill. App. Ct. 2023).

Plaintiffs do not discuss how any of the above four elements are met and the Court declines the blanket invitation to imply a private cause of action. *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 ("If [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning."). Still, even a cursory look at the Illinois Home Repair Fraud Act and surrounding state statutory landscape reveals that it is unnecessary to imply a private cause of action to give the statute force. First, the Home Repair Fraud Act carries stiff penalties—up to a class 3 felony. *See* 815 ILCS 515/4(b). It thus cannot be said to be like statutes with penalties "so minor that they provided no incentive for compliance." *Moore*, 630 N.E.2d at 996. Moreover, there is no evidence that implying a private right of action is necessary to remedy violations of the statute because many of its enforcement provisions are coextensive with other private causes of

action under the Illinois Home Repair and Remodeling Act or the Illinois Consumer Fraud and Deceptive Business Practices Act—both statutes under which the Plaintiff has also sued. *See O'Malley*, 227 N.E.3d at 811 (declining to imply a private right of action for forgery or mail and wire fraud because other civil statutes are "available to redress fraudulent conduct in Illinois"). Accordingly, Plaintiff's claim under Count VI is dismissed with prejudice.

## III.    Statutes of Limitations

The Court now turns to the Defendants' argument that the remainder of Smith's claims should be dismissed with prejudice as time barred. For Smith's two remaining federal claims, the Court first asks whether the statute expressly supplies a limitations period; if it does not, the Court will "borrow the most closely analogous statute of limitations from state law." *Jones v. Gen. Elec. Co.*, 87 F.3d 209, 211 (7th Cir. 1996). Even if the Court does borrow a state statute of limitations for a federal claim, "the accrual of a federal cause of action is a matter of federal law." *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1460 (7th Cir. 1992).

### A.  Federal Claims (Counts II & III)

Defendants argue Plaintiff's federal claims under the FHA, ADA, and Section 504 of the Rehabilitation Act must be dismissed as barred by those statutes' two-year limitations period. (Dkt. 14 at 21–24). The FHA prohibits any "person or other entity whose business includes engaging in residential real estate-related transactions" from discriminating against "any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a). Private plaintiffs must bring any claims under the FHA no later than "2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this subchapter, whichever occurs last[.]" 42 U.S.C. § 3613(a).

Section 504 of the Rehabilitation Act prohibits discrimination under any program receiving federal funding based on disability; the ADA similarly prohibits any public entity from engaging in disability discrimination. 29 U.S.C. § 794(a); 42 U.S.C. § 12132. Neither the Rehabilitation Act, nor the ADA, provide an express statute of limitations, however, both are subject to Illinois' two-year statute of limitations governing personal injury actions. *See Rutledge v. Ill. Dept. of Hum. Servs.*, 785 F.3d 258, 260 (7th Cir. 2015) (applying "Illinois' two-year statute of limitations for personal-injury suits . . . to suits filed in Illinois under section 504 of the Rehabilitation Act"); *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 551 (7th Cir. 1996) (applying Illinois' two-year statute of limitations for personal injuries to ADA claim). Plaintiff filed her complaint in Illinois state court on September 18, 2024.

Plaintiff does not dispute that the discriminatory practice underlying her claims took place in 2017, and that she became aware of Defendants' allegedly insufficient construction work shortly after she and Kondaur finalized the sale of the Property in June of that year. Instead, she argues her federal claims are not barred because of various provisions in the FHA limitations section that apply to her action, as well as broader principles of "equitable tolling, waiver or estoppel." (Dkt. 20 at 2–4). None of these arguments save her claims.

First, Smith suggests that she had two years to bring her FHA claim after "the breach of a conciliation agreement entered into under this subchapter." 42 U.S.C. § 3613(a). The Court understands Smith to be suggesting that the Chicago Lawsuit settlement constitutes a "conciliation agreement," entered on February 21, 2024, thereby extending the limitations period into 2026. (Dkt. 20 at 3). A conciliation agreement is a contract between a complainant and respondent based on an underlying charge of discrimination filed with the Department of Housing and Urban Development. *See generally* 24 C.F.R. § 103.310. The privately negotiated settlement agreement

in the Chicago Lawsuit, which did not involve charges of discrimination or violations of the FHA, is plainly not a conciliation agreement. Moreover, Smith does not allege the settlement agreement was breached. Section § 3613(a)'s conciliation agreement provision does not apply to this case.

Smith's next argument, that the limitations period should be tolled to account for the "City of Chicago's process of identifying the affected properties" related to the Chicago Lawsuit also fails. (Dkt. 20 at 3). Here, she invokes § 3613(a)(1)(B), which excludes from the FHA's two-year limitations period "any time during which an administrative proceeding under this subchapter was pending with respect to a complaint or charge under this subchapter based upon such discriminatory housing practice." Again, no such charge of discrimination was ever filed, and the City of Chicago's process of identifying properties at which ResiPro and ResiCap completed work does not constitute an "administrative proceeding."

Smith concedes that a two-year limitations period applies to her Rehabilitation Act and ADA claim (Count III of the First Amended Complaint), but argues it remains timely based on principles of equitable tolling, waiver, or estoppel. Beyond merely stating that these doctrines may sometimes serve to extend a statute of limitations period, Smith does not argue how or why they apply to the facts of her case. (Dkt. 20 at 4). Equitable tolling and, particularly, the continuing violations doctrine applies to civil rights discrimination claims such as those raised in Counts II and III of Smith's First Amended Complaint. *See, e.g.*, *Wallace v. Chi. Hous. Auth.*, 321 F. Supp. 2d 968, 972 (N.D. Ill. 2004) ("[A]n allegation of a continuing violation under the FHA is treated differently than an allegation of a discrete act of discrimination for statute-of-limitations purposes."); *Access Living of Metro. Chi., Inc. v. City of Chicago*, 752 F. Supp. 3d 922, 933 (N.D. Ill. 2024) (applying the continuing violations doctrine to ADA and Rehabilitation Act claims). To benefit from the continuing violations doctrine, however, a plaintiff must allege not just one

11

discriminatory incident or act but rather "an unlawful practice that continues into the limitations period." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81 (1982). If the discriminatory conduct complained of "occurred before the limitations period [and] was sufficient to notify the plaintiff that he had a substantial claim . . . the continuing violation doctrine does not apply[.]" *Shanoff v. Illinois Dep't of Hum. Servs.*, 258 F.3d 696, 703 (7th Cir. 2001).

Smith alleges that she and the two adults under her guardianship are all black women, and that two of the three are disabled. (Dkt. 9 at ¶¶ 5–6, 38). She further incorporates allegations raised in the Chicago Lawsuit to suggest the Defendants focused their rehabilitation efforts on the south and west sides of Chicago. (*Id.* ¶ 15). But Smith's substantive allegations about the real estate transaction are devoid of any facts related to how Defendants discriminated against her. And at best, she alleges an isolated incident of conduct. There are no facts in Smith's Complaint that allege a continuing pattern of discrimination on the part of the Defendants that extends into the limitations period, beginning on September 18, 2022. Indeed, there are no facts whatever about Defendants' conduct in the seven years between when Smith purchased the Property and when she filed this lawsuit. There is no basis to apply the continuing violations doctrine in this case.

For the above reasons, the Court dismisses Plaintiffs FHA, Rehabilitation Act, and ADA claims (Counts II and III) with prejudice as barred by the statute of limitations.

### B. Remaining State Law Claims

Smith's six remaining state law claims present closer questions on timeliness grounds, given the parties' briefing on the applicability of the Illinois discovery rule. *See Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Each claim is subject to a two-, three- or five-year statute of limitations. As detailed below, however, the Court finds dismissal is warranted as to each of these claims based on the substance—or lack thereof—of Smith's First

Amended Complaint. Accordingly, the Court declines to consider whether the Illinois discovery rule serves to toll the otherwise expired limitations periods. *See Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir.2014) (cautioning against dismissal on limitations grounds unless the "complaint itself set forth everything necessary to satisfy the affirmative defense").

## IV. Factual Sufficiency

### A. Illinois Consumer Fraud and Deceptive Business Practices Act (Count IV)

Count IV of Smith's First Amended Complaint alleges the Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"). 815 ILCS 505, *et seq.* The Consumer Fraud Act is a "regulatory and remedial statute intended to protect consumers [ ] against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (internal quotation marks omitted) (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)). Two causes of action can arise from the Act based on either deceptive conduct or unfair practice. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019). Smith's claim is for deceptive conduct, as she alleges the Defendants induced her into purchasing the Property through deception, fraud, false pretenses, and misrepresentations. (Dkt. 9 ¶ 49). To state a claim under the Act, a Plaintiff must show: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). Moreover, deceptive conduct claims are subject to the heightened pleading standard set forth in Fed. R. Civ. P. 9(b), and plaintiffs must "plead with particularity the circumstances constituting fraud." *Vanzant*, 934 F.3d at 738. Pleading fraud with

particularity means identifying the "who, what, when, where, and how" of the alleged fraud. *Id.* (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014)).

Smith claims that the Defendants represented to her that the repair work they completed on the Property was satisfactory and in compliance with state and local laws. (*See* Dkt. 20 at 10 ("They certified to the city, state and HUD and mainly the basis of this case, Plaintiffs that the rehab and repair work was satisfactorily [sic].")). "The making of allegedly deceptive statements to induce a party to purchase real property . . . [is] actionable under the Act." *Peter J. Hartmann Co. v. Cap. Bank & Tr. Co.*, 694 N.E.2d 1108, 1117 (Ill. App. Ct. 1998). But real estate cases brought under the Act typically involve sellers who misrepresent property features during a transaction. *See, e.g.*, *Siegel v. Levy Org. Dev. Co.*, 607 N.E.2d 194, 198–99 (Ill. 1992). This is a very different case, involving not a seller but a contractor hired *by* the seller to complete repair work on a property prior to sale. The Court accepts as true Smith's factual claim that there were some interactions between her and the Defendants during the real estate transaction—despite the Defendants' vociferous claims to the contrary, (*see, e.g.*, Dkt. 21 ¶ 13). Even so, Smith has not pled any facts related to what Defendants' role in the sale was, when they spoke, and what was said or not said during those interactions. Thus, she altogether fails to plead with particularity, as Rule 9(b) requires, the specific misrepresentations Defendants made, when they made them, and in what context.

Smith predicates some portion of her claim on the Defendants' dealings with the City of Chicago, primarily in failing to procure proper permits for their work. But she cannot rely on those facts alone without any explanation of how the Defendants' actions concerning the City induced her to purchase the Property. Again, Smith merely states that Defendants used "deception[,] fraud, false pretense, [and] misrepresentation," with the intent to induce Smith to buy the Property. (Dkt.

14

9 ¶ 49). These allegations are quintessential "threadbare recitals of the elements of a cause of action" and fall short of ordinary pleading standards, much less heightened ones. *Iqbal*, 556 U.S. at 678. Smith has pled the "who" required to state a claim under the Consumer Fraud Act, but is missing the "what, when, where, and how." *Vanzant*, 934 F.3d at 738. Count IV of her First Amended Complaint is dismissed without prejudice.

### B. Fraud (Count VIII)

Smith's common law fraud claim suffers many of the same defects as her Consumer Fraud Act claim. She argues that the Defendants committed fraud based on their "false statements of material fact" exposed in the Chicago lawsuit as well as their "fraudulent concealment." (Dkt. 9 ¶ 79). The elements of a fraud claim under Illinois law are: "(1) [a] false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance." *Wigod*, 673 F.3d at 569 (alteration in original) (quoting *Dloogatch v. Brincat*, 920 N.E.2d 1161, 1166 (Ill. 2009)). To state a claim for fraudulent concealment, a plaintiff must meet all the above elements and allege that "the defendant intentionally omitted or concealed a material fact that it was under a duty to disclose to the plaintiff." *Id.* at 571. Like the Consumer Fraud Act, common law fraud claims are subjected to Rule 9(b)'s heightened pleading standard. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008).

Again, Smith has failed to allege with particularity what false statements the Defendants made during the real estate transaction upon which she relied. The closest she comes is by stating that "Defendants signed documents . . . and induced others to sign legally binding contractual real estate transactional documents . . . certifying, representing, and warranting that all improvements

to the property were in legal compliance." (Dkt. 9 ¶ 32). To plead fraud with particularity, Smith would need to state what documents the Defendants signed, when they signed those documents, and what specific warranties and/or representations were made because of those signings. Without that crucial information, the Court is left with no facts upon which it can draw a connection between the Defendants, as a contractor hired by the seller of the Property, and Smith. And as discussed above, Smith cannot rely on the allegedly false statements Defendants made to the City of Chicago without anything to suggest that those statements to a third-party induced her to make the at-issue purchase.

Second, concerning Smith's fraudulent concealment of material facts claim, she has failed to establish that the Defendants were under a duty to disclose those facts. A duty to disclose exists if there is either (a) a fiduciary relationship between a plaintiff and defendant or (b) a defendant occupies a "position of influence and superiority over the plaintiff," such that they have a special trust relationship. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996). A special trust relationship is "extremely similar to that of a fiduciary relationship." *Benson v. Stafford*, 941 N.E.2d 386, 403 (Ill. App. Ct. 2010). Smith does not argue that the Defendants, effectively contractors hired by the Property seller, owed her a fiduciary duty, and one clearly does not exist. And it is exceedingly rare for Illinois courts to infer special trust relationships without some showing the defendant had an "overwhelming influence" over the plaintiff. *Wigod*, 673 F.3d at 572 (quotations omitted); *see also Martin v. State Farm Mut. Auto. Ins. Co.*, 808 N.E.2d 47, 52 (Ill. App. Ct. 2004) (finding no special trust relationship existed between automobile owner and insurer because "[t]here [were] no allegations of a history of dealings or long-standing relationship between the parties"). There is no extended history between the parties and no allegations that Smith ever placed any level of trust in them in handling her affairs. Indeed, the parties disagree

16

over whether they have ever met. With no duty to disclose, Smith's fraudulent concealment claim also fails.

Smith's state fraud claim in Count VIII of her First Amended Complaint is dismissed without prejudice.

### C. Illinois Home Repair and Remodeling Act (Count V)

Smith's First Amended Complaint also alleges the Defendants violated various provisions of the Illinois Home Repair and Remodeling Act, 815 ILCS 513, *et seq.* Specifically, she claims the Defendants failed to provide her with a copy of the "Home Repair: Know Your Consumer Rights" pamphlet, in violation of § 513/20(a).[2] (Dkt. 9 ¶ 54). But Smith is not ResiPro or ResiCap's customer, and thus cannot sue under the Home Repair and Remodeling Act.

The Home Repair and Remodeling Act applies to "any person who contracts with a homeowner for home repair or remodeling exceeding $1,000." *Fleissner v. Fitzgerald*, 937 N.E.2d 1152, 1157 (Ill. App. Ct. 2010) (emphasis omitted). And § 513/20(a) requires contractors like ResiPro to "provide to its customers a copy of the 'Home Repair: Know Your Consumer Rights' pamphlet *prior to* the execution of any home repair and remodeling contract." (emphasis added). But Smith did not hire ResiPro to perform any work, Kondaur did. (*See* Dkt. 14 at 14, 26–27, 31). Smith concedes the Defendants' work on the property "occur[red] prior to the sale." (Dkt. 20 at 9–10). Obviously, then, Defendants could not then have provided Smith with the "Know Your Rights" pamphlet prior to executing the remodeling contract with Kondaur.

In determining that the Home Repair and Remodeling Act applied only to general contractors, not subcontractors, the Illinois Supreme Court emphasized the "[t]he entire focus of

---

[2] Smith also states that "Section 25" of the Home Repair and Remodeling Act "requires Defendants have public liability and property damage insurance coverage," but she fails to allege that Defendants did not carry this coverage. (Dkt. 9 ¶ 54).

the Act is on regulating the direct contact and contracting between the 'person' and the homeowner or consumer." *MS Elec. Contractors, Inc. v. Abrams*, 888 N.E. 2d 54, 60 (Ill. 2008). This reading is faithful to the statute's broader framework, which places affirmative obligations on contractors and service providers at the time of contracting. *See, e.g.*, 815 ILCS 513/15 (requiring written contracts or work orders for repair or remodeling work over $1,000). Reading the Home Repair and Remodeling Act as applying to subsequent homeowners like Smith who did not contract for the work in the first place would frustrate this framework. Because the Act specifically regulates "communications and business practices of those people who directly solicit and contract with the homeowner," Smith, who concedes she never contracted with the Defendants, is unable to state a claim under its private enforcement provision. *Abrams*, 888 N.E.2d at 63. For these reasons, Count V of Smith's First Amended Complaint is dismissed with prejudice.

### D.  Tortious Interference with Contract (Count VII)

Count VII of Smith's First Amended Complaint alleges a tortious interference with contract claim under Illinois law. That tort is comprised of five essential elements:

> (1) that a valid and enforceable contract existed between the plaintiff and another party, (2) that the defendant was aware of that contract relation, (3) that the defendant intentionally and unjustifiably induced a breach of the contract, (4) that there was a subsequent breach of the contract by the other party that was caused by the defendant's wrongful conduct, and (5) that the plaintiff suffered damages

*Law Offs. of Charles Chejfec, LLC v. Franz*, 232 N.E.3d 1111, 1122 (Ill. App. Ct. 2023) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989)). Defendants contest Smith's tortious interference claim on the second, third, and fourth elements: knowledge, inducement, and subsequent breach. (Dkt. 14 at 29). Smith does not meaningfully respond to Defendants' arguments.

Assuming without deciding that Smith has plausibly alleged the Defendants' awareness of the contract between her and Kondaur, she has altogether failed to plausibly allege inducement and subsequent breach. Smith has not alleged that the real estate contract between her and Kondaur (or any other contract, for that matter) has been breached, much less that Defendants had anything to do with a hypothetical breach. Quite the contrary, Smith alleges that the Defendants depended on the sale going through and succeeding to receive "HUD backed mortgage funding." (Dkt. 9 ¶ 15). While it remains unclear to the Court what Smith's specific allegations are as to the underlying funding arrangement, those allegations are beside the point for the purposes of this claim. Because Plaintiff's own factual narrative, as pled, negates two necessary elements to her tortious interference claim, Count VII of her First Amended Complaint is dismissed without prejudice.

### E.  Negligence (Count X)

Smith brings a claim for common law negligence in Count X of her First Amended Complaint. To state a claim for negligence under Illinois law, a plaintiff must establish (1) that the defendant owed her a duty of care; (2) that the defendant breached that duty; and (3) that she was injured as a proximate result of that breach. *Winters v. Fru-Con Inc.*, 498 F.3d 734, 746 (7th Cir. 2007). Generally, contractors owe a duty of care to "any potential plaintiff to guard against any injury that is a foreseeable consequence of its act." *Lundy v. Whiting Corp.*, 417 N.E.2d 154, 163 (Ill. App. Ct. 1981). Thus, Smith, as a subsequent homeowner of a Property on which Defendants completed substantial rehabilitation work, is a foreseeable plaintiff to whom Defendants owed a duty of care.

Unlike her other causes of action, which focus on the Defendants' alleged fraudulent statements or actions, Smith's negligence claim centers on the actual construction work

Defendants completed on the Property. She claims that work was "done in violation of the City of Chicago's process and procedures for residential construction" and that it has directly and proximately caused significant monetary losses. (*See* Dkt. 9 ¶¶ 77–80). But apart from discussing the results of a 2024 inspection, and stating she experienced "severe construction issues" shortly after purchasing the Property, Smith has not actually detailed any of the allegedly negligent work the Defendants completed. (Dkt. 9 ¶¶ 17, 20). This leaves the Court without sufficient information to gauge whether Smith has plausibly alleged the Defendants breached their duty of care. It similarly fails to provide the Defendants with "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quotation omitted). For these reasons, Count X of Smith's First Amended Complaint is dismissed without prejudice.

### F. Civil Conspiracy (Count IX)

Finally, because the Court at this stage has dismissed all substantive tort claims from Smith's First Amended Complaint, and an independent cause of action must underlie a state law civil conspiracy claim, Smith's claim under Count IX fails. *See Sassak v. City of Park Ridge*, 431 F. Supp. 2d 810, 821 (N.D. Ill. 2006) ("[V]iability of [a] state law conspiracy claim depends on the existence of independent state law claims."). Indeed, Smith's civil conspiracy claim may also be flawed in a more fundamental respect, in that it alleges a conspiracy between a parent company and its wholly owned subsidiary. (*See* Dkt. 9 ¶¶ 7–8). The Supreme Court has held that wholly owned subsidiaries and their parent companies cannot be held liable as co-conspirators in antitrust cases, and the Seventh Circuit has extended that reasoning to conspiracy claims arising in different contexts. *See Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 777 (1984); *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 194 (2010); *Travis v. Gary Cmty. Mental Health Ctr.*, 921 F.2d 108, 110 (7th Cir. 1990); *see also Nissan Motor Acceptance Corp. v.*

*Schaumburg Nissan, Inc.*, 1993 WL 360426, at *8–9 (N.D. Ill. Sept. 15, 1993). But because Smith's claim is deficient for more basic reasons, the Court declines to weigh in on whether the Supreme Court's reasoning in *Copperweld* and its progeny applies to this case. Count IX of Smith's First Amended Complaint is dismissed without prejudice.

## **CONCLUSION**

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss [13] Counts II–X of Plaintiff's First Amended Complaint. Whether each Count's dismissal is with or without prejudice is specified in the Opinion. The Court reserves judgment on Plaintiff's False Claims Act claim, pending the parties' supplemental briefing.

Virginia M. Kendall
United States District Judge

Date: July 8, 2025