**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| RONETTA SMITH, in her personal capacity and as guardian *ad litem* to MILDRED SMITH and DORIS SMITH, ) ) ) ) ) ) *Plaintiff*, ) ) v. ) ) RESPIRO, LLC and RESICAP, LP, ) ) *Defendants*. ) ) ) | No. 24 C 11732 Chief Judge Virginia M. Kendall |

**OPINION AND ORDER**

On July 8, 2025, the Court issued a Memorandum Opinion and Order dismissing Counts II–X of Plaintiff Ronetta Smith's First Amended Complaint. (Dkt. 26). The Court reserved ruling on Count I of Smith's Complaint—alleging Defendants ResiPro, LLC and ResiCap, LP violated the False Claims Act ("FCA")—pending supplemental briefing. (*Id.* at 5–7). Having reviewed the parties supplemental briefs, (Dkt. 28; Dkt. 29), the Court dismisses Count I of Smith's Complaint with prejudice.

**DISCUSSION**

The Court assumes familiarity with the facts as set forth in its prior Opinion and Order. (Dkt. 26). Defendants removed this case from Illinois state court pursuant to 28 U.S.C. § 1441(b) on November 14, 2024. (*See generally* Dkt. 1). On December 31, 2024, Smith filed her First Amended Complaint adding, for the first time, a claim under the FCA, 31 U.S.C. §§ 3729, 3730(b)(1). (*See* Dkt. 9 ¶¶ 27–33). Civil claims under the FCA are brought on the government's

1

behalf, and are thus subject to specific procedures. An individual plaintiff—a "relator"—must file their FCA complaint under seal and serve the United States government with a "copy of the complaint and written disclosure of substantially all material evidence and information" relevant to their case. 31 U.S.C. § 3730(b)(2). That did not happen here. Instead, Smith filed her FCA claim on the public docket and never served the government with anything. (Dkt. 26 at 6). Neither party addressed this issue in their papers on the Defendants' Motion to Dismiss, (Dkt. 13), prompting the Court to request supplemental briefing on whether Smith's failure to satisfy § 3730(b)(2)'s prerequisites should result in the dismissal of her FCA claim. (Dkt. 26 at 7). Now, with the benefit of that briefing, the Court considers Count I of Smith's Complaint, from both a factual sufficiency and statutory compliance perspective.

## I. Factual Sufficiency of Smith's FCA Claim

To state a claim under the FCA's civil enforcement provision, a relator "must allege the following essential elements with particularity: (1) the defendant made a statement in order to receive money from the government; (2) the statement was false; and (3) the defendant knew the statement was false." *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 840 (7th Cir. 2018). Like Smith's state law fraud claim, her FCA claim must meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009) ("[P]articularity . . . means the who, what, when, where, and how.").

Smith alleges that the Defendants made false statements during the real estate transaction to induce the United States government into paying them money through its "HUD program." (Dkt. 9 ¶ 31). As discussed in the Court's prior order, Smith does not allege or argue that Defendants ever received funds directly from the government, but that they were "somehow

2

incentivized to complete quick and shoddy work to receive some of the Plaintiff's HUD-backed mortgage funding upon sale of the Property." (Dkt. 26 at 3). The Court has trouble squaring Smith's separate allegation that Defendants "certified to . . . HUD . . . that the rehab and repair work was [completed] satisfactorily." (Dkt. 20 at 10). For it implies that Defendants were interfacing directly with HUD. But if Smith proceeds on that theory, she has failed to specify the scope or nature of those interactions.

Just as the Court dismissed Smith's state law claims for fraud and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, *et seq.*, so too must it dismiss her FCA claim. (*See* Dkt. 26 at 13–17). Like those claims, Smith has failed to plead with particularity what Defendants' role was during the real estate transaction, when she spoke with Defendants, and what specific misrepresentations were made during those dealings. Merely alleging that Defendants made "false statements" during the transaction is not enough to satisfy Rule 9(b)'s heightened pleading standard. Smith encounters another pleading hurdle, specific to her FCA claim, in that she does not explain how Defendants intended to "receive money *from the government*" because of their false statements. *Berkowitz*, 896 F.3d at 840 (emphasis added). Smith did not purchase the property from the Defendants. Instead, a private seller, Kondaur Capital Corporation ("Kondaur") hired the Defendants to complete repair work on the property prior to sale. (Dkt. 26 at 14). It follows that Kondaur would have paid Defendants for their work, not Smith using her HUD-backed mortgage funding. To the extent that Smith claims Defendants made false representations directly to the government, and thereby gained access to some other source of government funds, she fails to set forth that narrative with any coherence or specificity.

Accordingly, Smith has pled only the "who" required to state a claim under the FCA; she is missing the "what, when, where, and how." *Lusby*, 570 F.3d at 853. These deficiencies would

3

ordinarily result in a dismissal without prejudice. That was the case with Smith's fraud and Consumer Fraud Act claims. (Dkt. 26 at 15, 17). Her separate failure to comply with § 3730(b)(2)'s sealing and notice requirements, however, counsels in favor of a dismissal with prejudice.

## II. Compliance with § 3730(b)(2)'s Prerequisites

The FCA sets forth in clear and unambiguous terms the process a relator must follow in prosecuting a *qui tam* action. The relator must file its complaint "in camera," and the complaint shall remain "under seal for at least 60 days, and shall not be served on the defendant until the court so orders." 31 U.S.C. § 3730(b)(2). The relator must also serve the government with a copy of the complaint along with a disclosure statement including "all material evidence and information the person possesses." *Id.* During the initial sixty-day seal period, the relator is "obligated to remain idle pending resolution of the government's investigation and decision whether to intervene." *United States ex rel. Sarmont v. Target Corp.*, 2003 WL 22389119, at *4 (N.D. Ill. Oct. 20, 2003). It is only when the "government declines to take over the case" that the relator can maintain the *qui tam* action. *Khan v. Chi. Hous. Auth.*, 2002 WL 849801, at *2 (N.D. Ill. May 3, 2002). Smith simply filed her First Amended Complaint with her FCA claim on the public docket—without regard for § 3730(b)(2)'s procedural requirements—where it was immediately accessible to the Defendants. (Dkt. 9).

In ordering supplemental briefing on the § 3730(b)(2) issue, the Court stated that failure to comply with the FCA's "sealing and disclosure requirement does not mandate dismissal." (Dkt. 26 at 7). Upon closer examination of the case law, that is not entirely accurate. Some circuits have concluded that failure to comply with the FCA's sealing and disclosure requirements mandates dismissal of a relator's FCA claim with prejudice. The Sixth Circuit, for example, concluded that "violations of the procedural requirements imposed on *qui tam* plaintiffs under the False Claims

4

Act preclude such plaintiffs form asserting *qui tam* status." *United States ex rel. Summers v. LHC Grp., Inc.*, 623 F.3d 287, 297–99 (6th Cir. 2010), *abrogated on other grounds by State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, 580 U.S. 26 (2016). And the Second Circuit adopted a similar approach—though not as bright-lined as the Sixth's. *See United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 1000 (2d Cir. 1995) (citation modified) (holding that, in most instances, a "failure to comply with the filing and service provisions of § 3730(b)(2) irreversibly frustrates the congressional goals underlying those provisions" and mandates with prejudice dismissal of an FCA claim). Other circuits have adopted a balancing test that weighs the harm to the government, the nature of the violations, and whether the violations were made willfully or in bad faith before deciding whether to dismiss an FCA claim for § 3730(b)(2) violations. *See United States ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 245–47 (9th Cir. 1995); *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 470 (5th Cir. 2015).

The Seventh Circuit has not yet encountered this issue, though it has suggested that a § 3730(b)(2) service violation may serve as a "basis for dismissal" of an FCA claim. *United States ex rel. Lu v. Ou*, 368 F.3d 773, 774 (7th Cir. 2004), *abrogated on other grounds by United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 931 n.1 (2009). Moreover, courts in this district have largely concluded that dismissal is the necessary consequence of a § 3730(b)(2) violation, without balancing the various harms and interests. *See Khan*, 2002 WL 849801, at *2 (granting summary judgment in favor of a defendant on an FCA claim when the plaintiff filed the action in his own name, failed to serve the complaint and his evidence on the government, and did not allow the government time to decide whether to intervene); *Sarmont*, 2003 WL 22389119, at *4 (recognizing that dismissal may be appropriate in a case where a plaintiff attempts to "go it alone" on an FCA claim without giving the government an opportunity to intervene); *United States*

5

*ex rel. Fowler v. Caremark RX, Inc.*, 2006 WL 1519567, at *5 (N.D. Ill. May 30, 2006) (suggesting failure to comply with § 3730(b) preconditions "requires dismissal").

Without firm guidance from the Seventh Circuit, this Court declines to adopt one specific approach because Smith's FCA claim should be dismissed with prejudice according to any of the various rubrics. Of course, if the Court were to apply the Sixth Circuit's approach, Smith's failures would be alone sufficient to permanently dispose of her FCA claim. Under the Ninth Circuit's approach, then, the Court considers the various interests at play below.

Smith's sealing and disclosure violations work an inherent harm on the government's interests. Even though the government may have already been aware of the underlying conduct due to an extended Illinois state *qui tam* action predating this suit, the government was nonetheless deprived of an opportunity to independently "determine whether the complaint might interfere with any ongoing investigation or whether the government should intervene." *Pilon*, 60 F.3d at 999. That harm is difficult to quantify *ex post*. That said, Smith represents that she provided the United States Attorney's Office with a "a copy of the First Amended Complaint, the City of Chicago Complaint, a Disclosure Statement and a copy of this Court's Memorandum Opinion and Order via email" on July 28, 2025. (Dkt. 29 at 3). The government has not contacted the Court or voiced any intention to participate in these proceedings since that time. All told, there is a certain inherent harm that stems from Smith's actions here, but not enough to alone justify dismissal of her FCA claim with prejudice.

The nature of Smith's § 3730(b)(2) violations, however, compels that result. This case does not involve a minor or partial violation, but rather a relator who "*completely* failed to comply with *any* of the requirements of § 3730(b)(2)." *Lujan*, 67 F.3d at 246 (citing *Erickson ex rel. United States v. Am. Inst. of Bio. Scis.*, 716 F. Supp. 908, 911 (E.D. Va. 1989)). Her counsel's explanation

6

for those missteps leaves the Court with more questions than answers. For example, she contends that "there was a bit of confusion and political upheaval in that a new President won the election and began making political appointments upon taking his seat in the Office," thereby causing her to doubt whether the FCA's statutory procedures would continue to endure in their previous form. (Dkt. 29 at 1–2). This line of reasoning defies logic for at least two reasons. First, Smith filed her First Amended Complaint including the FCA claim on December 31, 2024. (Dkt. 9). On that date, there had been no change in administration; President Trump had not yet "take[n] his seat in the Office." (Dkt. 29 at 1). No new political appointees would assume their duties for several weeks—after the inauguration on January 20, 2025. More fundamentally, though, there is no legal or factual basis to support a licensed attorney's conclusion that a change in the executive branch would somehow implicate or alter her obligations under federal statute. Section 3730(b)(2)'s requirements are clear, and counsel made no effort to comply with them. On this record, the Court has no choice but to conclude that Smith, through counsel, demonstrated a "considerable lack of good faith," in the prosecution of this FCA claim. *Pilon*, 60 F.3d at 999.

On balance, considering the inherent harm to the government that stems from Smith's § 3730(b)(2) violations along with the nature of those violations, dismissal of Smith's FCA claim with prejudice is warranted.

**III.    Remand and Leave to Amend**

The Court has now dismissed all ten of the claims Smith raised in her First Amended Complaint. Counts I, II, III, V, and VI were dismissed with prejudice. That leaves Counts IV, VII, VIII, IX, and X, which were dismissed without prejudice. Those claims are for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, tortious interference with contract, fraud, conspiracy, and negligence. They all arise under state law. Smith contends that Defendants'

removal of this case amounts to a "substantial injustice to the Plaintiff[]" and asks the Court to "transfer [her] state law claims that were dismissed without prejudice back to state court preferably since all the federal claims were dismissed." (Dkt. 29 at 3). But this case was properly removed based on diversity, not federal question, jurisdiction. (*See* Dkt. 1-1 at 3–6); 28 U.S.C. §§ 1332(a), 1441(b). The nature of the remaining claims, state or federal, is immaterial to the propriety of Defendants removal or this Court's continuing jurisdiction over the matter. *See Air Ill., Inc. v. Approved Aircraft Accessories, Inc.*, 1986 WL 12308, at *2 (N.D. Ill. Oct. 29, 1986) ("Pursuant to 28 U.S.C. § 1447(c), an action removed from state court may be remanded only if the action was removed improvidently or the district court is without jurisdiction."). Smith's request for a remand is therefore denied.

In the alternative, Smith requests leave to amend her Complaint. (Dkt. 29 at 3). This is the first time the Court has passed on Smith's claims and, generally, leave to amend should be freely granted as justice requires. *See Gonzalez-Koeneke v. West*, 791 F.3d 801 (7th Cir. 2015); Fed. R. Civ. P. 15(a)(2). Accordingly, Smith's request for leave to amend is granted.

## CONCLUSION

For the foregoing reasons, Count I of Smith's First Amended Complaint is dismissed with prejudice. The Court grants Smith leave to file a Second Amended Complaint. She must do so within twenty-one days of this Order.

_____
Virginia M. Kendall
United States District Judge

Date: November 10, 2025

8